UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARNULFO CHAVARIN,<br><br>    Petitioner,<br><br>    v.<br><br>DAVID HOLBROOK,<br><br>    Respondent. | No.  2:19-cv-01521 TLN KJN P<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

I. Introduction

Petitioner is a state prisoner, proceeding without counsel, with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his April 26, 2017 convictions for kidnapping to commit rape and rape with an aggravated kidnapping enhancement.  (ECF No. 22-3 at 89-171.)  Petitioner was sentenced to 83 years and 4 months in state prison.  (Id. at 283.)  Petitioner raises two claims in his habeas petition:  (1) counsel failed to object to witnesses testifying about statements made by his wife and challenges the sufficiency of the evidence, and (2) there is insufficient evidence to support his convictions for kidnapping to commit rape (count 45) and rape with an aggravated kidnapping enhancement (count 46).  In accordance with petitioner's request to proceed only on his exhausted claim two, this court strikes by order claim one.  After carefully reviewing the record, this court concludes that the petition should be denied on claim two.

II. Procedural History

On April 26, 2017, a jury found petitioner guilty of 40 counts of lewd acts on a child, four counts of unlawful sexual intercourse, one count of forcible rape, and one count of kidnapping to commit rape. (ECF No. 22-3 at 283-88.) On May 24, 2017, petitioner was sentenced to 83 years and 4 months in state prison. (Id. at 283.)

Petitioner appealed the conviction to the California Court of Appeal, Third Appellate District. The Court of Appeal modified the judgment to stay execution on the 25-year-to-life sentence on count 45, but otherwise affirmed the judgment as modified on December 5, 2018.

Petitioner filed a petition for review in the California Supreme Court, which was denied on February 13, 2019.

Petitioner filed his first petition on July 23, 2019. (ECF No. 1.) This court granted leave to file an amended petition, and petitioner filed his first amended petition on January 2, 2020. (ECF Nos. 18 & 19.) Respondent filed an answer on March 26, 2020. (ECF No. 21.) Petitioner filed a traverse on April 22, 2020. (ECF No. 23.)

III. Facts[1]

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> Defendant's daughter testified defendant began sexually abusing her when she was five years old and they lived in the San Diego area. Every time her mother was out of the house or otherwise not around, defendant would touch her genitals and put his fingers inside her vagina. The touching happened multiple times each week. The daughter tried to tell her mother, but the mother did not believe her.
>
> When the daughter was six years old, defendant began putting his mouth on her vagina. He would do so two to three times a week, and he also continued touching her vagina. The daughter feared defendant would hurt her if she did not do what he wanted. Defendant said her mother did not love her and would just get rid of her if she talked about the abuse. Defendant told the daughter it was her fault and said if he could stop, he would.

---

[1] The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in People v. Chavarin, No. C085371 (Dec. 5, 2018), a copy of which was lodged by respondent as ECF No. 22-10.

Defendant first had intercourse with the daughter on her 14th birthday. He told her she should be happy it was him because no one was ever going to love her. He said everyone would hate her if she ever said anything. He also promised not to do anything to her younger sister if she had intercourse with him. Defendant had a vasectomy and told the daughter she now belonged to him forever, and there was nothing she could do.

Once the daughter started middle school, defendant would show up at her school. It made her feel trapped, like she could not go anywhere without him being there. Defendant continued to have intercourse with her when she was in high school. When the daughter began college, defendant continued to show up at her school, making her feel there was nowhere she could go where he would not be.

When the daughter was 20 years old, defendant accused her of sleeping around with someone and kicked her out of the family home. The daughter moved to her uncle's home in the Sacramento area, but when her mother got upset about her move, the daughter returned to San Diego. Within a few days of the daughter's return, defendant resumed touching her. He would have her meet up with him for sex during the workday in his work van. If the daughter tried to come up with an excuse to avoid being alone with him, defendant would threaten to tell the mother, who he said would kick her out and hate her forever. Defendant told the daughter she was his property and there was nothing she could do. Defendant also threatened to leave and break up the family if the daughter failed to perform sexually.

In October 2015, the daughter (then age 22) returned to live with her uncle in the Sacramento area. Defendant had gone through her phone and discovered she was communicating with A., a young man she liked. When defendant found out the daughter had kissed A., defendant was angry. He called her a slut and began hitting her. He choked her so hard she could not breathe, leaving bruises on her neck, back, and arms. Defendant subsequently threw her out of the house. She told her mother she was going to move in with her uncle, but defendant told her she had to stay. Defendant told her, "Wherever you go, I will find you." But her mother took her to the bus station and the daughter made her way to her uncle's.

The daughter obtained a job near her uncle's home at a local fast food restaurant. Defendant would call her at her uncle's and at her workplace. He called her selfish and said he would stop touching her if she returned home. She was afraid he would come to the Sacramento area and show up at her work. Defendant threatened to kill her, himself, and A. if she did not return home. He also threatened to show things to A. that would ruin her life and make A. hate her. Defendant also threatened to come to the Sacramento area and kill her, telling her he had a gun. Although the daughter missed her family and friends, she remained in the Sacramento area because she knew defendant would never stop touching her.

One afternoon, defendant showed up unannounced to her workplace. Defendant asked the daughter's manager if she could leave early. The

3

daughter was scared and ashamed and did not tell her boss anything was wrong. Defendant and the daughter went to eat at a nearby pizza restaurant. Defendant said he loved her and that she belonged to him. He threatened to kill himself if she did not return to San Diego. He promised not to touch her and said he would take her back to her uncle's after they talked. Even though the daughter was scared, she got into the car with him. Defendant began driving and then said he wanted to take her to his motel room to show her something he had gotten her. The daughter began to feel like she was never going to get out of this and that she had no choice.

Defendant drove for 30 minutes. The entire time, he kept trying to hold the daughter's hand, even though she told him she did not want him to touch her or do anything to her. When they arrived at the motel, the daughter felt like he was going to keep her inside until he got what he wanted. The daughter asked to stay in the car, but defendant told her to come inside and promised to return her to her uncle's if she did so. The daughter feared he had a gun, given their recent conversations. She went inside the motel room. She did not try to leave because she did not know where she could go and feared he would catch her anyway.

When the daughter entered the motel room, she saw flowers and a teddy bear, and defendant put on music. Defendant told her to sit down and said he loved her, claiming he could not choose who he was in love with. Defendant promised to return her to her uncle's but asked her to lie down and go to sleep. The daughter was scared defendant would try to touch her again and asked him not to do anything. Defendant threatened to kill himself or A., telling the daughter it would be her fault. The daughter lied down on the bed and started to fall asleep. She woke up to defendant touching her. She tried to push him off and told him to stop. Defendant ignored her screams and kept touching her. Not knowing where to run, the victim stayed. Defendant took off her clothes and put his penis inside of her. When defendant finished, he told her everything would be fine if she would just let him be with her sometimes.

The two stayed in the motel room until defendant left for a few minutes to get food. The daughter remained in the room because she did not have a car and did not know where she was, or how to get back to her uncle's. Defendant returned and they ate, and then defendant threatened to get himself another woman. Defendant eventually took her back to her uncle's, dropping her off a few blocks away. The motel was about 20 minutes away from her uncle's and six miles from her workplace.

Defendant continued to call the daughter at her uncle's and at her work. When her mother said they were coming up for Thanksgiving, the daughter was scared because defendant had threatened to kill her if she did not come home, saying he could do whatever he wanted with her. On Thanksgiving, defendant and the family arrived at her uncle's. Defendant grew angry and demanded the daughter come home. He also said the daughter used to love him and threatened to kill himself or A. At that point the daughter told family members what had been happening. Her brother called the police and they

4

> arrested defendant.
>
> At trial, defendant testified he did not engage in any sexual activity with the daughter until she was 18. He said it was consensual and the daughter told him she was happy.
>
> The trial court sentenced defendant to an aggregate determinate state prison term of 83 years 4 months, consisting of the following: eight years on count 1, a consecutive two years (one-third the midterm of six years) each on counts 2 through 36, a consecutive eight months (one-third the midterm of two years) each on counts 37 through 40, and a consecutive eight months (one-third the midterm of two years) each on counts 41 through 44. In addition, the trial court imposed the following indeterminate terms: a consecutive 25 years to life on count 46, and a concurrent 25 years to life on count 45.

(People v. Chavarin, slip op. at 2-6.)

IV. Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

For purposes of applying § 2254(d)(1), "clearly established Federal law" consists of holdings of the Supreme Court at the time of the last reasoned state court decision. Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 132 S. Ct. 38, 44-45

5

(2011)); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 133 S. Ct. 1446, 1450 (2013) (citing Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012) (per curiam)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. Id. Further, where courts of appeals have diverged in their treatment of an issue, there is no "clearly established federal law" governing that issue. See Carey v. Musladin, 549 U.S. 70, 77 (2006).

      A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions, but unreasonably applies that principle to the facts of the prisoner's case."[2] Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (quoting Williams, 529 U.S. at 413; see also Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 411; see also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 ("It is not enough that a federal habeas court, in its 'independent review of the legal question,' is left with a '"firm conviction"' that the state

---

[2] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." Stanley, 633 F.3d at 859 (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

6

court was "'erroneous'""). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." Id. at 103.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100. Similarly, when a state court decision on petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, 568 U.S. 289, 298-301 (2013) (citing Richter, 562 U.S. at 98). If a state court fails to adjudicate a component of the petitioner's federal claim, the component is

reviewed de novo in federal court.  See, e.g., Wiggins v. Smith, 539 U.S. 510, 534 (2003).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d).  Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853.  Where no reasoned decision is available, the habeas petitioner has the burden of "showing there was no reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. Stancle v. Clay, 692 F.3d 948, 957 & n.3 (9th Cir. 2012).  While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court reviews the state court record to "determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Id. at 101.  "It remains the petitioner's burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo.  Stanley, 633 F.3d at 860 (citing Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006)).

V.  Petitioner's Claims

Petitioner raises two claims in his petition.  In claim one, he appears to argue that counsel failed to object to witnesses testifying about statements made by his wife and challenges the sufficiency of the evidence.  (ECF No. 19 at 15.)  In claim two, petitioner asserts that there is insufficient evidence to support his convictions for kidnapping to commit rape (count 45) and rape with an aggravated kidnapping enhancement (count 46).  (Id. at 22.)

After reviewing the record in this action, this court found that petitioner failed to exhaust state court remedies as to claim one and directed petitioner to indicate how he would like to proceed in this action. (ECF No. 25.) The court outlined petitioner's four options: (1) dismiss the entire petition without prejudice, (2) proceed on an amended petition raising only the exhausted claim two, (3) file a request to stay this action pending exhaustion of state court remedies with respect to the unexhausted claim one pursuant to Rhines v. Weber, 544 U.S. 269 (2005), or (4) file an amended petition which includes only the exhausted claim two along with the request that the amended petition be stayed pursuant to Kelly v. Small, 315 F.3d 1063 (9th Cir. 2003). (Id. at 3-4.)

On March 23, 2022, petitioner replied to the court's order. (ECF No. 30.) First, petitioner requested free copies of the record. This court usually does not provide free copies.[3] As a result, this court denies petitioner's request for free copies of the record in his case. Second, petitioner indicated that he would like to proceed on option 2, an amended petition raising only exhausted claim two. He noted, however, that he is unable to file an amended petition raising only his exhausted claim because he no longer has any of his case documents. Petitioner asks this court to "disregard the unexhausted issue/claim as waived by petitioner and proceed/rule on the exhausted issue/claim before the court." (Id. at 3.) Because petitioner no longer has copies of the record, this court has decided to strike by order the unexhausted claim one rather than requiring him to file an amended petition.

As a result, petitioner has one remaining claim—that there is insufficient evidence to support his convictions for kidnapping to commit rape (count 45) and rape with an aggravated kidnapping enhancement (count 46). (ECF No. 19 at 2.) This court addresses that claim below.

A. State Court Opinion

He raised this claim in his direct appeal. In the last reasoned state court decision, the

---

[3] The Clerk's Office will provide copies of documents and of the docket sheet at $0.50 per page. Checks in the exact amount are made payable to "Clerk, USDC." Please Note: In Forma Pauperis status does not include the cost of copies. Copies of documents in cases may also be obtained by printing from the public terminals at the Clerk's Office or by contacting Cal Legal Support Group at: 3104 "O" Street, Suite 291, Sacramento, CA 95816, phone 916-441-4396, fax 916-400-4948.

California Court of Appeal considered and rejected the claim:

> Defendant contends the evidence is insufficient to support the conviction for count 45 (kidnapping to commit rape) or the true finding on the aggravated kidnapping enhancement on count 46 (rape). According to defendant, the evidence shows his daughter consented to go with him from her workplace to the pizza restaurant. He also argues the prosecution failed to prove that the movement of the daughter from her workplace to the motel substantially increased the risk of harm to her. He claims the movement was incidental to the sex act, he only moved her six miles, there was no evidence he was armed, he never restrained her, and the daughter did not summon help despite having opportunities to do so at her workplace, at the pizza restaurant, and at the motel when defendant left to get food.
>
> In considering a claim of insufficient evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses substantial evidence such that a reasonable jury could find the defendant guilty beyond a reasonable doubt. (*People v. Elliot* (2005) 37 Cal.4th 453, 466.) We presume the existence of every fact supporting the judgment that the jury reasonably could deduce from the evidence, and a judgment will be reversed only if there is no substantial evidence to support the verdict under any hypothesis. (*People v. Bolin* (1998) 18 Cal.4th 297, 331; *People v. Jennings* (2010) 50 Cal.4th 616, 638-639.) We do not substitute our judgment for that of the jury, reweigh the evidence, or reevaluate the credibility of witnesses. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)
>
> A defendant is guilty of aggravated kidnapping, such as kidnapping to commit rape, only if the crime involved movement of the victim that (1) is more than merely incidental to the underlying crime, and (2) increases the risk of physical or psychological harm to the victim beyond that inherent in the underlying crime. (§ 209, subd. (b)(2); *People v. Nguyen* (2000) 22 Cal.4th 872, 885-886; *People v. Martinez* (1999) 20 Cal.4th 225, 232-233.) The two aspects "are not mutually exclusive, but interrelated." (*People v. Rayford* (1994) 9 Cal.4th 1, 12, disapproved on other grounds by *People v. Acosta* (2002) 29 Cal.4th 105, 120, fn. 7.)
>
> "The essence of aggravated kidnapping is the increase in the risk of harm to the victim caused by the forced movement." (*People v. Dominguez* (2006) 39 Cal.4th 1141, 1152.) Although "each case must be considered in the context of the totality of its circumstances," relevant factors include "whether the movement decreases the likelihood of detection, increases the danger inherent in a victim's foreseeable attempts to escape, or enhances the attacker's opportunity to commit additional crimes." (*Ibid.*) For example, the court in *Dominguez* concluded there was sufficient evidence to sustain a verdict of aggravated kidnapping to commit rape where the defendant forced the victim in the middle of the night from the side of a public road to a spot in an orchard 25 feet away and 10 to 12 feet below the level of the road. The new location made it unlikely the victim could be seen from the road and decreased the possibility of detection, escape, or rescue, and thus was not merely incidental to

> the rape. (*Id*. at pp. 1153-1154.)
>
> > The asportation element of section 667.61, subdivision (d)(2) is "almost identical" to the one in section 209: the penalty is increased if the rapist " 'kidnapped the victim of the present offense and the movement of the victim substantially increased the risk of harm to the victim over and above that level of risk necessarily inherent in the underlying offense.' " (*People v. Ledesma* (2017) 14 Cal.App.5th 830, 837.)
> >
> > We conclude there is sufficient evidence establishing that moving the daughter from her workplace to the motel was not merely incidental to the underlying crime. Defendant did not rape his daughter in the car, he took her to a distant motel where she would be more isolated and vulnerable. That no one responded to her screams during the rape underscores the increased danger of the motel location. She had no idea where she was or how to flee; she did not have a car and feared defendant would catch her if she ran. Defendant also increased the risk of psychological harm to his daughter with his comments at the motel. (*People v. Nguyen, supra*, 22 Cal.4th at p. 886 [increased risk of harm may be emotional or psychological].) The convictions are supported by sufficient evidence.

(People v. Chavarin, slip op. at 6-8.)

   B.   Discussion

A petitioner is entitled to habeas corpus relief on a sufficiency of the evidence claim "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 324 (1979); see also Ngo v. Giurbino, 651 F.3d 1112, 1115 (9th Cir. 2011).  This inquiry involves two steps. First, this court must review the evidence in the light most favorable to the prosecution.  Jackson, 443 U.S. at 319.  If there are conflicting factual inferences, the federal habeas court must presume the jury resolved the conflicts in favor of the prosecution.  Id. at 326 ("[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."); McDaniel v. Brown, 558 U.S. 120, 133 (2010) (per curiam).  Second, this court will "determine whether the evidence at trial, including any evidence of innocence, could allow *any* rational trier of fact to find the essential elements of the crime beyond a reasonable doubt." United States v. Nevils, 598 F.3d 1158, 1165 (9th Cir. 2010) (en banc).

Although this court's review is grounded in due process under the Fourteenth Amendment, the Jackson standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Jackson, 443 U.S. at 324 n.16; Juan H. v. Allen, 408 F.3d 1262, 1275-76 (9th Cir. 2005). This court will look to state law to establish the elements of the offense and then turn to the federal question of whether the state court was objectively unreasonable in concluding that sufficient evidence supported that conviction. See Johnson v. Montgomery, 899 F.3d 1052, 1056 (9th Cir. 2018).

"After AEDPA, we apply the standards of *Jackson* with an additional layer of deference." Juan H., 408 F.3d at 1274; see Coleman v. Johnson, 566 U.S. 650, 651 (2012) (per curiam). On direct appeal at the state level, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." Cavazos v. Smith, 565 U.S. 1, 2 (2011) (per curiam). On habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" Id. (quoting Renico v. Lett, 559 U.S. 766, 773 (2010)).

Here, the jury convicted petitioner of kidnapping to commit rape (California Penal Code § 209(b)(1))) and rape (California Penal Code § 261(a)(2)). (ECF No. 22-3 at 184.) California law defines kidnapping to commit rape as any kidnapping or carrying away of an individual to rape where "the movement of the victim is beyond that merely incidental to the commission of, and increases the risk of harm to the victim over and above that necessarily present in, the intended underlying offense." Cal. Penal Code § 209(b)(1) and (2). The kidnapping enhancement to the rape charge includes a similar provision; "[t]he defendant kidnapped the victim of the present offense and the movement of the victim substantially increased the risk of harm to the victim over and above that level of risk necessarily inherent in the underlying offense…." Cal. Penal Code § 667(d)(2). As cited by the state appellate court, the California Supreme Court clarified that the increase in risk of harm to the victim by the forced movement "'must be considered in the context

of the relevant circumstances.'"  (ECF No. 22-10 at 7 (citing People v. Dominguez, 39 Cal. 4th 1141, 1152 (2006)).)  Relevant factors include "whether the movement decreases the likelihood of detection, increases the danger inherent in a victim's foreseeable attempts to escape, or enhances the attacker's opportunity to commit additional crimes."  Dominguez, 39 Cal. 4th at 1152.  To the extent that petitioner argues that his conviction "does not conform to the requirements of state law," (ECF No. 19 at 15), the state court's interpretation of state law is binding on this court.  See Bradshaw v. Richey, 546 U.S. 74, 76 (2005) (per curiam).

      The appellate court considered the trial record and reasonably concluded that there was sufficient evidence that transporting the daughter from her work to the motel increased the risk of harm to her and was not merely incidental to the underlying crimes.  Petitioner sexually abused his daughter since she was five years old, and she was scared of him. (ECF No. 22-10 at 2, 4; ECF No. 22-5 at 84.)  One day, petitioner showed up at her work without any warning.  (ECF No. 22-10 at 4.)  Although petitioner promised to drive her from work to the uncle's house, he drove her to his motel instead, about 30 minutes away.  (ECF No. 22-10 at 4; ECF No. 22-5 at 10-11.)  In the car, she told him not to touch her, but he kept trying to hold her hand.  (ECF No. 22-10 at 4; ECF No. 22-5 at 10-11.)  When they arrived at the motel, she did not want to go inside the room, but eventually did because she did not know what he was going to do and thought he had a gun.  (ECF No. 22-10 at 4; ECF No. 22-5 at 13.)  She did not try to run because she feared he would catch her.  (ECF No. 22-10 at 5; ECF No. 22-5 at 13-14, 17.)  The daughter did not have a car and was unfamiliar with the area.  (ECF No. 22-10 at 5; ECF No. 22-4 at 300; ECF No. 22-5 at 14, 19.)  In the motel room, petitioner professed his love for her and told her that he was going to kill himself or A. and it would be her fault.  (ECF No. 22-10 at 5; ECF No. 22-5 at 16.)  He told her to lay down and said he would not touch her.  (ECF No. 22-10 at 5; ECF No. 22-5 at 16.)  But that was a lie.  When she started to fall asleep, he started touching her.  (ECF No. 22-10 at 5; ECF No. 22-5 at 16.)  She screamed at him, told him to stop, and tried to push him off, but he did not stop.  (ECF No. 22-10 at 5; ECF No. 22-5 at 17-18.)  No one responded to her cries for help.  Petitioner raped her.  (ECF No. 22-10 at 5; ECF No. 22-5 at 18.)  After he was finished, she asked him to take her home, which he did later that evening. (ECF No. 22-10 at 5; ECF No. 22-5 at 19, 22-23.)  The motel was 20 minutes driving distance from her uncle's

house and six miles away from her work. (ECF No. 22-10 at 5.) Based on these facts, the state appellate court reasonably concluded that moving the daughter from her workplace to the motel was not incidental to the crimes. It made her more isolated and vulnerable given her inability to flee or unfamiliarity with the area. (ECF No. 22-10 at 8.) Furthermore, petitioner's comments and threats at the motel increased the risk of psychological harm to the daughter, especially given the history of sexual abuse. (Id.) The state court's decision was not contrary to, or an unreasonable application of, clearly established federal law, or that such a finding was based on an unreasonable application of the facts. This court recommends denying habeas relief on petitioner's claim.

VI. Conclusion

Accordingly, IT IS HEREBY ORDERED that petitioner's unexhausted claim is stricken from the petition.

Furthermore, IT IS HEREBY ORDERED that petitioner's request for free copies of the record is denied.

Lastly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the

////

////

////

14

specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: April 4, 2022

*Kendall J. Newman*
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/TAA/chav1521.157